1
2
3
4
5
6
7

8       **UNITED STATES DISTRICT COURT**

9       **NORTHERN DISTRICT OF CALIFORNIA**

10      **SAN FRANCISCO DIVISION**

11  | MICHAEL RAYNAL, and others, | Case No. 11-cv-05599 NC |

12  | Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

13  | v. |

14  | NATIONAL AUDUBON SOCIETY, INC., | Re: Dkt. No. 63 |

15

16  | Defendant. |

17      This action arises out of a property dispute between plaintiffs and the National

18  Audubon Society and the alleged misrepresentations by Audubon regarding the location of

19  the boundary of the parties' respective properties.  The central issue presented is whether

20  Audubon's presentation of maps associated with a survey it commissioned to ascertain the

21  boundary of section nine constituted deceit under California law.  Having considered the

22  parties' arguments and submissions, the Court DENIES Audubon's anti-SLAPP motion to

23  strike, and GRANTS in part and DENIES in part its motion for summary judgment.

24                                    **I. BACKGROUND**

25  **A.    Property and Easement Disputes Between the Parties**

26      Plaintiffs and Audubon own adjacent properties in Sonoma County, California.  Dkt.

27  No. 48 ¶ 11.  Plaintiffs are private landowners.  *Id.* ¶ 1.  Audubon is an environmental

28  conservation, nonprofit organization that owns property adjacent to plaintiffs' properties.

Dkt. No. 63 at 3-4.  Audubon's property in the area is subject to a Forever Wild Easement, which is an easement granted by Audubon to the people of Sonoma County that requires Audubon to use the property for "the management and preservation of natural resources" and prohibits Audubon from dividing, subdividing, or de facto subdividing the property. *Id.* at 3.

The torts alleged in this action arise out of the following two disputes.  First, after a wildfire in 2004, Audubon refused to widen plaintiffs' right-of-way easement across its property, which plaintiffs claim prevented them from rebuilding their destroyed homes and harvesting their salvageable timber.  Dkt. No. 48 ¶¶ 22, 44.  Second, in early 2007, Audubon informed plaintiffs that it owned at least twenty-six acres of plaintiffs' land based on a survey by Curtis & Associates ("the Curtis survey").  Dkt. No. 48 ¶ 18.  Plaintiffs claim the Curtis survey was inaccurate.  *Id.*  In March and April of 2007, Audubon met with plaintiffs to present the results of the Curtis survey, but the parties did not come to an agreement with respect to the boundary of section nine at that time.  Dkt. No. 63 at 6-7. Nevertheless, Audubon publicly disclosed the results of the Curtis survey.  Dkt. No. 48 ¶ 20.  Plaintiffs subsequently conducted their own investigation of the boundary line.  *Id.* ¶¶ 23-24.  Based on the results of plaintiffs' investigation, Audubon and plaintiffs recorded a boundary line agreement in March 2010, which fixed the boundary between Audubon and plaintiffs' properties at the location originally claimed by plaintiffs and affirmed plaintiffs' easement right in the roadways leading to plaintiffs' properties.  *Id.* ¶¶ 1, 24; Dkt. No. 63 at 14.

**B.    Plaintiffs' Claims Against Audubon in the First Amended Complaint**

After granting Audubon's motion to dismiss, the Court granted plaintiffs leave to amend.  Dkt. No. 43.  In their amended complaint, plaintiffs bring the following four claims against Audubon, which arise out of the property and easement disputes discussed above: (1) deceit, (2) slander of title, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress.  Dkt. No. 48 ¶¶ 28-49.

//

1

**C.    Audubon's Anti-SLAPP Motion and Motion for Summary Judgment**

2        Audubon filed a motion under California's anti-SLAPP statute, Civil Procedure Code

3 § 425.16, to be considered, in the alternative, as a motion for summary judgment.  Dkt. No.

4 63.  First, Audubon argues that because its land is subject to a Forever Wild Easement, its

5 statements about its land are a matter of public interest, protected by California's anti-

6 SLAPP statute.  *Id.* at 18-19.  Audubon argues that its statements about the boundary line

7 were made in order to ascertain and preserve the public's interest, and therefore, constitute

8 protected conduct.  *Id.* at 19.  It also asserts that its statements to plaintiffs are privileged

9 under California Civil Code § 47(c).  *Id.* at 20-21.

10        Second, Audubon claims that plaintiffs cannot meet their burden of showing a

11 probability of prevailing on the merits, and thus its anti-SLAPP motion should be granted,

12 entitling it to attorneys' fees and costs.  *Id.* at 29.  Specifically, Audubon argues that

13 plaintiffs' deceit claim fails because the statements Audubon made were true and plaintiffs

14 cannot show that they relied on Audubon's statements.  *Id.* at 22-23.  Audubon argues that

15 plaintiffs' slander of title claim fails because no damages resulted from its statements to

16 third parties and because Audubon's statements to plaintiffs are privileged.  *Id.* at 24-25.

17 Audubon contends that plaintiffs cannot establish any of the elements of an intentional

18 infliction of emotional distress claim and that Audubon owes plaintiffs no duty that could

19 potentially give rise to liability for negligent infliction of emotional distress.  *Id.* at 25, 26.

20 In addition, Audubon alleges that all of plaintiffs' claims are barred by the applicable

21 statute of limitations.  *Id.* at 27.

22        In the alternative, Audubon moves for summary judgment.  *Id.* at 18, 29; Dkt. No. 88

23 at 20.

24 **D.    Plaintiffs' Opposition**

25        Plaintiffs dispute that Audubon's conduct is protected by the anti-SLAPP statute and

26 assert that the boundary dispute is a private matter that does not implicate any issue of

27 public concern.  Dkt. No. 86 at 20.  Plaintiffs argue that it is Audubon's burden to show

28 that the specific speech at issue—namely, the statements about the location of the boundary

of section nine—is a matter of public interest, and that they cannot meet that burden. *Id.* at 21. Plaintiffs contend that the Forever Wild Easement is irrelevant to the speech at issue here because "[t]he disputed property was not 'open-space land' in danger of being converted to urban uses; it is property upon which Plaintiffs have long had their homes." *Id.* Plaintiffs also dispute that Audubon's speech is privileged because Audubon published the statements to others who had no interest in the boundary dispute and because Audubon's statements were made in bad faith, thus destroying the privilege. *Id.* at 25-26.

In addition, plaintiffs assert that their claims are at least minimally meritorious and survive Audubon's anti-SLAPP motion to strike. *Id.* at 26. Plaintiffs contend that Audubon deceived plaintiffs when it (1) presented altered maps as accurate Curtis & Associates' surveys, (2) represented that the Curtis survey supported Audubon's position on the location of the boundary, (3) concealed that the 1918 Joseph Cox survey located the boundary at the fence line, and (4) stated that the altered maps were immediately recordable. *Id.* at 22. Plaintiffs argue that Audubon intentionally manipulated and presented the altered survey maps in order to make its case for the location of the disputed boundary. *Id.* at 23. The effect of Audubon's conduct was that plaintiffs took Audubon's assertions regarding the location of the boundary seriously, hired their own land experts and attorneys, considered negotiating a land swap, and incurred expenses in their endeavor to ascertain the actual boundary line. *Id.* at 24. Plaintiffs did not know until October 2008 that Audubon had altered the Curtis survey, making their claim for deceit, which allegedly arose out of the same transaction and occurrence as the claims filed in September 2011, timely. *Id.* at 30.

Plaintiffs contend that a slander of title claim is actionable if it is foreseeable that the disparaging statement might affect a third party and that they need not show actual interference or harm to the sale of the property. *Id.* at 26. Plaintiffs assert that Audubon intentionally or recklessly caused plaintiffs' emotional distress by misrepresenting the Curtis survey, which plaintiffs argue constituted extreme and outrageous conduct. *Id.* at 27. Plaintiffs also state that their negligent infliction of emotion distress claim is

1 meritorious because Audubon assumed a duty of reasonable care when it published its

2 claim to plaintiffs' property. *Id.* at 29. Finally, plaintiffs argue that these claims are not

3 time barred because of the doctrines of equitable tolling and equitable estoppel. *Id.* at 31.

4 **E.   Plaintiffs' Objections to Evidence Cited in Support of Audubon's Motions**

5 Under Federal Rule of Civil Procedure 56, Audubon must show no dispute of fact

6 based on admissible evidence. Plaintiffs object to documents and excerpts of deposition

7 testimony cited by Audubon in support of its motions.

8 **1.   October 2006 letter from Bruce Young**

9 Plaintiffs object to Audubon's reliance on a letter from Bruce Young to Debra

10 Osborn, Audubon's director of real estate, dated October 1, 2006. Dkt. No. 79 at 2.

11 Plaintiffs assert that Audubon has failed to authenticate it under Federal Rule of Evidence

12 901 and to lay the proper foundation under Rule 104(b). *Id.* Audubon relies on the letter

13 to argue that plaintiffs were already aware of the Cox surveys at the time Audubon

14 presented the altered maps to plaintiffs, and thus no misrepresentation occurred. Dkt. No.

15 63 at 15, 23; Dkt. No. 88 at 13. The relevant part of the letter states "based on the last

16 available survey" "the boundary line issue will come down to one of two things": either the

17 line is approximately 300 feet off, or it is about 17 feet off. Dkt. No. 52-1 at 50.

18 "When the relevance of evidence depends on whether a fact exists, proof must be

19 introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). In

20 determining whether Audubon has met its burden the court "examines all the evidence in

21 the case and decides whether the jury could reasonably find the conditional fact"— here

22 whether the last survey available refers to the Joseph Cox survey— "by a preponderance of

23 the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988). Audubon cites to

24 two places in the record to prove the underlying fact that the "last available survey"

25 referenced in the October 2006 letter is the Joseph Cox survey. First, Audubon relies on

26 Osborn's deposition testimony that she walked the fence line with Bruce Young in

27 September and had a conversation about the boundary line. Dkt. No. 63-2 at 15-16. She

28 then states "I really can't remember if he specifically said this fence was on the Joseph

Cox. I don't remember that conversation. But, I know he was aware of the surveys and the discrepancies." *Id.* at 16. Second, Audubon relies on the deposition testimony of Robert Curtis of Curtis & Associates in which he states that his field notes reflect a statement from "Bud Warner" in 1998 that "the fences were built based on a survey by Joe Cox and O.C. Huebner 70 or more years ago." Dkt. No. 63-2 at 58. These field notes were given to plaintiffs in October 2008. Dkt. No. 63 at 15-16.

Neither of these deposition statements, when considered along with the other evidence in the case, is sufficient for a reasonable jury to find that Bruce Young meant the 1918 Joseph Cox survey when he wrote "the last available survey." First, Osborn states that she does not recall Young mentioning the Cox survey and cannot recall the conversation. In an email dated May 31, 2007 between her, Bruce Young, and Michael Raynal she notes that "Bruce Young said he has the field notes from the 1874 and 1975 surveys." Dkt. No. 85 at 38. This evidence suggests that Bruce Young described the 1975 survey when he used the words "the last available survey" in his letter. Indeed, the most recent survey described in the record is the 1975 dependent resurvey. Dkt. No. 58-1 at 17. Second, Audubon has not demonstrated that "Bud Warner," whom it describes as "plaintiffs' relative," dkt. no 63 at 15, shared his knowledge with Bruce Young or any plaintiff. Third, the fact that Robert Curtis may have produced his field notes to plaintiffs in October 2008 does not prove that Bruce Young had knowledge of their contents in October 2006. Accordingly, the Court GRANTS plaintiffs' objection to the admissibility of this letter and does not consider it in determining Audubon's motions.

### 2.    Plaintiffs' other evidentiary objections

Plaintiffs make several other evidentiary objections. *See* Dkt. Nos. 79, 89. The Court declines to rule on these objections at this time because it resolves Audubon's motion to strike and motion for summary judgment on other facts.

## F.    Request for Judicial Notice

Plaintiffs request judicial notice of four grant deeds on record in Sonoma County, a case from the Indiana Supreme Court, *Caylor v. Luzadder*, 36 N.E. 909 (Ind. 1894), and an

excerpt of *Bereavement: Studies of Grief in Adult Life* by Dr. Colin Murray Parkes (3d ed. 2001). Dkt. No. 78. A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1192 n.4 (9th Cir. 2008). The grant deeds and Indiana Supreme Court case are in the public record and subject to verification. Accordingly, the Court takes judicial notice of them. Dr. Parkes' book, however, is not a source that is immune from reasonable questioning. The theories postulated by one psychiatrist are not readily determined to be conclusive. *See* Fed. R. Evid. 201(f) ("In a civil case, the court must instruct the jury to accept the noticed fact as conclusive."). The Court, therefore, declines to take judicial notice of the facts presented in the excerpt.

**G.   Jurisdiction**

The Court has jurisdiction under 28 U.S.C. § 1332. Dkt. No. 1 at 2-3. All parties consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. Nos. 7, 9.

## II. STANDARD OF REVIEW

**A.   Anti-SLAPP**

The California Anti-SLAPP statute provides a procedural safeguard against lawsuits designed to chill speech and conduct protected under the First Amendment and the California Constitution. Cal. Civ. Proc. Code § 425.16. A court considering an anti-SLAPP motion engages in a two-part inquiry. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010). First, the defendant bears the burden of showing that the conduct at issue in the litigation is an "act in in furtherance of a person's right of petition or free speech." Cal. Civ. Proc. Code § 425.16(b)(1); *Mindys*, 611 F.3d at 595. Such acts include any "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4). In determining whether a defendant has met

1   its burden, the Court considers whether defendant has made "a prima facie showing that the

2   plaintiff's causes of action arise from acts . . . taken to further the defendant's rights of free

3   speech or petition in connection with a public issue." *Flatley v. Mauro*, 139 P.3d 2, 11 (Cal.

4   2006). "[T]he focus of the anti-SLAPP statute must be on the specific nature of the speech

5   rather than on generalities that might be abstracted from it." *Mann v. Quality Old Time*

6   *Serv., Inc.*, 15 Cal. Rptr. 3d 215, 227 (Cal. Ct. App.  2004).

7       If the defendant makes this showing, the burden shifts to the plaintiff to show "a

8   probability that the plaintiff will prevail on the claim." *Id.* § 425.16(b)(1).  A "probability"

9   of prevailing on the merits has a meaning specific to the anti-SLAPP statute:  it "requires

10  only a minimum level of legal sufficiency and triability" or "minimal merit." *Mindys*, 611

11  F.3d at 598 (internal citations omitted).  In evaluating whether the plaintiff has met this

12  burden, the court may look beyond the pleadings, but does not weigh the evidence or make

13  credibility determinations. *Id.* at 598-99.  The "court should grant the motion if, as a matter

14  of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to

15  establish evidentiary support for the claim." *Id.* at 599 (internal citations omitted).

16  **B.   Summary judgment**

17      Summary judgment may be granted only when, drawing all inferences and resolving

18  all doubts in favor of the nonmoving party, there are no genuine issues of material fact and

19  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex*

20  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under governing

21  substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*,

22  477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is

23  such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  Bald

24  assertions that genuine issues of material fact exist are insufficient. *Galen v. County of Los*

25  *Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).

26      The moving party bears the burden of identifying those portions of the pleadings,

27  discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.

28  *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving

party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c).  All reasonable inferences, however, must be drawn in the light most favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

## III. DISCUSSION

**A.   Audubon Fails to Establish that Its Conduct Is Protected.**

   **1.   Audubon's conduct is not connected to an issue of public interest.**

   Subsection (e)(4) of the anti-SLAPP statute protects "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(4).[1]  Audubon argues that because its land is subject to a Forever Wild Easement, that the statements it made in its attempt to ascertain the boundaries of that land constitute the type of constitutionally protected activity that the anti-SLAPP motion is designed to protect.  In support of its contention, Audubon cites to California Governance Code § 65561 and a Sonoma County General Plan from 1989 which state that Forever Wild Easements were created to serve the public's interest in ensuring that certain tracts of land remain undeveloped and natural.

   In determining whether Audubon has met its burden, the Court considers whether plaintiffs' suit, which challenges the legality of Audubon's statements about the location of the section nine boundary, arises from Audubon's constitutional right to speech, and whether there is a distinction between Audubon's specific speech and the public's interest in a Forever Wild Easement.  For example, in *Tuchscher Dev. Enterprises, Inc. v. San Diego Unified Port Dist.*, the court found that a planned residential and commercial development on a large tract of bayfront property, which had been presented to the mayor

---

[1] To the extent that Audubon made statements "in a place open to the public or a public forum," its speech could also be analyzed under subsection (e)(3) of § 425.16.  Plaintiffs allege that Audubon published its views on its website, which could be considered a place open to the public or a public forum.  The Court does not reach this issue because, as discussed below in Part.III.B.3, only Audubon's conduct and statements to plaintiffs are relevant to the resolution of this motion.

Case No. 11-cv-05599 NC
ORDER RE: MOTION FOR          9
SUMMARY JUDGMENT

and city council and had been the subject of public forums with local community groups,
environmental groups, and government agencies, was a matter of public interest.  132 Cal.
Rptr. 2d 57, 69 (Cal. Ct. App. 2003).  Accordingly, the fact that defendants in that case
ceased negotiations with a particular developer and sought advice from third parties was
protected action under § 425.16(e)(4).  *Id.* at 64, 69.

Conversely, in *Wang v. Wal-Mart Real Estate Bus. Trust*, the court found that
although Wal-Mart had applied for government permits to develop a tract of land, the
"overall thrust of the complaint" challenged the "manner in which the parties privately dealt
with one another" and not Wal-Mart's proposed use of the property.  63 Cal. Rptr. 3d 575,
591 (Cal. Ct. App. 2007).  Similarly, in *Mann*, defendants argued that their statements to
government officials and customers that their competitor had dumped toxic chemicals were
a matter of public interest.  15 Cal. Rptr. 3d at 227.  The court, however, found the
statements not protected by § 425.16(e)(4) because defendants had not presented any
evidence that the competitor was "in the public eye" and because the statements were not
about pollution or public health issues, but rather about the specific business practices of the
competitor.  *Id.*

Here, the acts of which plaintiffs complain are Audubon's presentation and
dissemination of a privately-commissioned survey and Audubon's statements about the
location of the boundary shared by it and plaintiffs.  Other than stating that its land is
subject to a Forever Wild Easement, Audubon makes no showing that the boundary of
section nine was "in the public eye" or that the exact parameters of the Sanctuary was a
public issue.  In fact, in at least one instance, Audubon stated that it did not want to involve
the press or make the boundary dispute with plaintiffs a "political issue."  Dkt. No. 5-2 at
73.  The existence of the Forever Wild Easement and the public's interest in preserving
open space generally does not give rise to plaintiffs' complaint.  Rather, plaintiffs'
complaint stems from Audubon's conduct in its private dealings with plaintiffs over the
location of the boundary and from the business practices of Audubon in attempting to
ascertain the disputed line.  Although there likely is a general interest in the continued

existence of a Forever Wild Easement on Audubon's property, the anti-SLAPP inquiry focuses on Audubon's specific activity. Accordingly, Audubon's statements and representations about the location of the boundary it shares with plaintiffs is not protected under § 425.16(e)(4).

**2.  Audubon's conduct is not privileged under California Civil Code § 47.**

Alternatively, Audubon argues that its statements are privileged under California Civil Code § 47(c) and that this privilege may form the basis of its anti-SLAPP motion. Section 47 makes privileged a "publication or broadcast" made "in a communication, without malice, to a person interested therein, by one who is also interested." Cal. Civ. Code §47(c), (1). This privilege applies narrowly, to private interests, not matters of public concern, and only where there is a "genuine common interest" between the communicator and the audience. *Brown v. Kelly Broad. Co.*, 771 P.2d 406, 415 (Cal. 1989) (discussing the common law underpinnings and legislative history of § 47(c)). It is Audubon's burden to establish that its statements are privileged under § 47(c), and if it succeeds, plaintiffs must show the statements were made with actual malice in order to rebut the privilege. *Taus v. Loftus*, 151 P.3d 1185, 1210 (Cal. 2007).

Malice, for the purposes of the common interest privilege, is defined as "motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the [communication] and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon v. Markowitz*, 85 Cal. Rptr. 3d 532, 547 (Cal. Ct. App. 2008) (internal citations omitted). "If malice is shown, the privilege is not merely overcome, it never arises." *Hailstone v. Martinez*, 87 Cal. Rptr. 3d 347, 355 (Cal. Ct. App. 2008). Because all that is needed to survive an anti-SLAPP motion is a showing of "minimal merit," if plaintiffs demonstrate that a trier of fact could find that Audubon's statements were made with malice, the Court must deny Audubon's motion. *Id.* at 355-56.

Plaintiffs assert that Audubon's stance regarding the location of the disputed boundary was motivated by a desire to build a visitor center on plaintiffs' home sites, which was the only tract of land within section nine zoned for development. Dkt. No. 26 ¶¶ 3-4;

Dkt. No. 23 ¶ 2.  Audubon's proposal to plaintiffs that they might keep the home sites in exchange for giving Audubon a larger tract of land elsewhere in section nine and relinquishing the easements in two access roads supports plaintiffs' assertion.  Dkt. No. 85 at 46-49.  Audubon also refused plaintiffs' request to modify an access road so that construction equipment could access the home site and rebuild the homes destroyed by wildfire.  Dkt. No. 76 ¶ 10.  Furthermore, the transcript of the March 2007 meeting at which Audubon presented its maps to plaintiffs shows that Audubon dismissed plaintiffs' concerns about the accuracy of the maps as unhelpful to resolving the boundary dispute, while simultaneously presenting Audubon's taking ownership of plaintiffs' land as the only option and relying on the need for county approval of any land swaps as an excuse for not proposing other solutions.  *See, e.g.*, Dkt. No. 5-2 at 18.  Based on these facts, a reasonable jury could determine that Audubon's statements about the location of the boundary line and the results of the Curtis survey were motivated by ill will, namely a desire for the only buildable tract of land in the section.

Plaintiffs also assert that Audubon knowingly misrepresented that the maps it presented to plaintiffs were accurate and recordable.  They cite to the statements of Curtis Kendall, Audubon's Sanctuary Manager, and Debra Osborn, Audubon's director of real estate, at the March 19, 2007 meeting.  Both Osborn and Kendall stated that the maps were accurate and that they could be recorded, and would need to be recorded within ninety days.  Dkt. No. 5-2 at 5, 47, 54, 57, 65, 71.  Osborn characterized the maps as the "determination of the surveyor [of] the official property line."  *Id.* at 5.  Kendall stated that the maps were accurate and that Curtis & Associates would vouch for their accuracy.  *Id.* at 8.  But, Robert Curtis and Brian Curtis of Curtis & Associates both testified in their depositions that the maps were only informational, were not complete, and needed to be considered as a set of four.  Dkt. No. 84 at 40, 48-49.  Robert Curtis stated that his firm was "taken off the job before any conclusions were made."  *Id.* at 31.  Osborn admitted in her deposition that she knew that the purpose of the maps was to present to Audubon Curtis & Associates' findings and as such they were only informational.  *Id.* at 97.  Kendall also admitted that he

1
2
3
4

understood the maps to be informative only. *Id.* at 78-79.  This is sufficient for a trier of fact to conclude that Audubon lacked reasonable grounds for belief in the truth of its communications.  Accordingly, Audubon's statements to plaintiffs are not privileged under § 47(c).  Therefore, the Court DENIES Audubon's anti-SLAPP motion.

5
6
7
8

Audubon moves in the alternative for summary judgment on plaintiffs' claims.  Thus, the Court considers whether Audubon has met its burden to show the absence of a genuine issue of material fact.  If so, the Court will consider whether plaintiffs have identified specific facts beyond the pleadings to show that a genuine dispute of fact does exist.

9
10

**B.   Because Plaintiffs Demonstrated a Genuine Dispute of Fact Material to Their Deceit Claim, Audubon's Motion for Summary Judgment Is Granted in Part.**

11

**1.    The statute of limitations does not bar plaintiffs' deceit claim.**

12
13
14
15
16
17
18
19
20
21
22

Audubon argues that that plaintiffs' deceit claim is barred by the three-year statute of limitations.[2]  Audubon states that it directed Curtis to share his files related to the boundary of section nine with plaintiffs' surveyor in October 2008.  Dkt. No. 63 at 28.  Accordingly, Audubon argues that plaintiffs must have filed any claim that Audubon deceived them by not accurately presenting the results of Curtis' findings by October 2011.  *Id.* at 28-29.  Because plaintiffs first brought the deceit claim against Audubon in April 2012, the three year statute of limitations bars the claim.  *Id.*  Audubon also argues that the deceit claim does not relate back to plaintiffs' original complaint because misrepresentation was not mentioned in plaintiffs' original complaint.  Dkt. No. 88 at 20.  Rather, plaintiffs alleged that Audubon made incorrect, public claims to ownership of the property.  *Id.*  Audubon argues that it was not "on notice" that misrepresentation was an issue in the suit.  *Id.*

23
24
25
26

Plaintiffs challenge this assertion on two grounds.  First, they dispute that their surveyor knew upon receiving Curtis' files in October 2008 that Audubon had altered the maps it presented to them and that this knowledge is attributable to plaintiffs at that time.  Dkt. No. 86 at 30 n.21.  Second, Plaintiffs argue that their deceit claim—which they alleged

27
28

---

[2] An action for relief on the ground of fraud must be brought within three years.  The cause of action accrues when the aggrieved party discovers the facts constituting the fraud.  Cal. Civ. Proc. Code § 338.

1  for the first time in their first amended complaint—arises out of the same transaction or

2  occurrence that gave rise to their original September 2011 complaint. *Id.* at 30 n.22.

3      "An amendment to a pleading relates back to the date of the original pleading when

4  the amendment asserts a claim or defense that arose out of the conduct, transaction, or

5  occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P.

6  15(c)(1)(B). "[R]elation back depends on the existence of a common core of operative facts

7  uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005)

8  (internal citation omitted). Rule 15(c) does "not require adequate notice of the claims, but

9  rather of the facts that formed the basis for those claims." *Martell v. Trilogy Ltd.*, 872 F.2d

10  322, 326 (9th Cir. 1989).

11      Here, plaintiffs' original complaint filed in state court on September 29, 2011 alleged

12  that "Audubon obtained a drawing that incorrectly depicted the boundaries within section

13  9" and used the "drawing as a subterfuge to wrongly claim that Audubon owns a large

14  swath of Plaintiffs' property to the east of the subject boundary." Dkt. No 1, Ex. 1 ¶ 19.

15  Plaintiffs asserted that Audubon's representations were motivated by its view of the home

16  sites "as prime locations for buildings and other improvements that Audubon desires but

17  otherwise cannot build or install on the Audubon property." *Id.* Plaintiffs also alleged that

18  "Audubon threatened to have the erroneous Audubon Drawing filed with the County

19  Recorder." *Id.* ¶ 20. In addition to the pubic disparagement of title that is the focus of the

20  original complaint, plaintiffs also claim that Audubon engaged in "other conduct [that]

21  required Plaintiffs to retain land experts and attorneys to affirm Plaintiffs' title in their

22  property and defend Plaintiffs against Audubon's unfounded claims." *Id.* ¶ 23. Although

23  primarily framed in terms of Audubon's statements and actions to the public, the facts that

24  form the basis of the claims put forth in the original complaint—Audubon's false claims to

25  the tract of land, its dubious presentation of an inaccurate map, and its statement that it

26  could record that map—are the same facts that form the basis of plaintiffs' deceit claim.

27  Accordingly, the deceit claim relates back to the initial complaint and is not barred by the

28  statute of limitations.

2.       **The parties genuinely dispute facts material to plaintiffs' deceit claim.**

The elements of fraud, which gives rise to the tort action for deceit, are

(a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud, i.e., to induce reliance;

(d) justifiable reliance; and (e) resulting damage. *Small v. Fritz Companies, Inc.*, 65 P.3d

1255, 1258 (Cal. 2003). In order to prevail on its motion, Audubon must show for each

element that no dispute of fact exists. *Anderson*, 477 U.S. at 248.

a.       **Misrepresentation**

Audubon alleges that there is no deceit because plaintiffs knew that the maps were

only preliminary. Dkt. No. 63 at 16. Audubon states that plaintiffs specifically asked to see

the preliminary results of the Curtis survey and that is why it showed plaintiffs the maps.

Dkt. No. 88 at 10-11. Audubon argues that their elimination of the Cox and Leonard

surveys does not constitute deceit as a matter of law for three reasons: first, because it did

not change the line that Curtis had, at that time, identified as the boundary; second, because

it had no duty to disclose such facts to plaintiffs; and third, because plaintiffs knew of the

Cox and Leonard surveys at the time that Audubon presented the Curtis surveys to

plaintiffs. *Id.* at 6-8.

In contrast, plaintiffs state that Audubon took two of four "informative" survey maps

created by Curtis & Associates, which did not represent the surveyors' conclusion about the

location of the section nine boundary, and represented that they did. Dkt. no. 86 at 12-13.

Plaintiffs claim that Audubon redacted lines on the surveys that did not support Audubon's

contentions regarding the location of the boundary line, including all references to the Cox

and Leonard surveys. *Id.* at 13. Audubon allegedly left a prominent Curtis & Associates

logo on the map. *Id.* Plaintiffs also assert that Audubon stated that it could record the

altered maps they presented to plaintiffs and attempted to dissuade plaintiffs from

conducting their own survey, suggesting that it would be useless and would force the parties

into court to resolve the boundary dispute. Dkt. No. 86 at 15, n.3.

In support, plaintiffs cite to the transcript of the March 19, 2007 meeting, when

Audubon first presented the maps to plaintiffs. Osborn began the meeting by saying that

the survey was "not complete" and described the drawings as a "preliminary map," Dkt. No. 5-2 at 5. Kendall stated that "we told you folks that we wouldn't set anything permanent until we talked." *Id.* at 49. But Osborn also stated that the maps represented "the, um, determination of the surveyor that this is the official property line," *id.* at 5, and Kendall stressed numerous times that there was no reason to doubt its accuracy, *id.* at 8, 31, 36, 70, and stated that Audubon had "a survey done that has given us a map that can be recorded," *id.* at 65. In response to these representations, plaintiffs asked if Audubon would record the survey while they looked into conducting their own. *Id.* at 53. Audubon responded by saying "we don't have a choice," *id.* at 53, "if your surveyor was going to take longer than 90 days, this might, in fact, get recorded," *id.* at 54. As if to clarify, Osborn said, "I mean, we could have—we could have just gone and recorded it. We could have. But I said that I'd share the information with you." *Id.* at 57.

As to whether the maps could be recorded, plaintiffs cite to the deposition testimony of Brian Curtis and Robert Curtis. Brian Curtis testified that the maps "were prepared as a report, not as a final documentation to record with the County of Sonoma." Dkt. No. 84 at 48. Robert Curtis testified that no conclusions were made by his firm and that he never told Audubon where the exact location of the section nine boundaries lay. *Id.* at 34. As to the accuracy of the maps, Robert Curtis testified that neither he nor anyone at his firm authorized the redaction of the maps. *Id.* at 24. Brian Curtis testified that the maps as Audubon had altered them were not an accurate representation of the information Curtis & Associates gave to Audubon. *Id.* at 52.

Audubon has failed to show that there is no dispute as to the element of misrepresentation. Plaintiffs have pointed to the depositions of Robert Curtis and Brian Curtis and the transcript of the March 19, 2007 meeting to show a dispute about the material fact of whether Audubon made a misrepresentation.

//

1

### b.   Knowledge of falsity

2      Audubon asserts that its statements were true and that because plaintiffs knew the

3  maps were preliminary, no misrepresentation could have occurred as a matter of law.  Dkt.

4  No. 63 at 22.  As discussed above, what plaintiffs knew, and when, is in dispute.

5

### c.   Intent to induce reliance

6      Audubon does not dispute that it presented only two of four Curtis survey maps or

7  that it redacted all references to the Cox and Leonard surveys.  Dkt. No. 63 at 22.  Audubon

8  argues, however, that it did not intend to present these maps as conclusive evidence that

9  plaintiffs did not own their home sites and thereby induce plaintiffs' reliance.  Dkt. No. 88

10  at 14.  Plaintiffs argue that Audubon redacted the maps with the intent to present the

11  incomplete and non-determinative maps as a final conclusion by Curtis & Associates, free

12  from the inconsistencies of the Cox and Leonard surveys, in order to bolster its contention

13  and induce plaintiffs to believe that they did not in fact own the tract of land in dispute.

14  Dkt. No. 86 at 13-15.

15      Plaintiffs cite to the March 19, 2007 meeting transcript, the tenor of which suggests

16  that the purpose of the meeting was to encourage plaintiffs to accept the validity of the

17  maps presented to them and to dissuade them from "second guessing" the "accurate"

18  "determination" of Curtis & Associates.  In an email between Audubon executives on

19  March 5-6, 2007, Audubon states that it wants to use a Curtis map to "make its case without

20  distractions" and to so do will "eliminate any reference to Cox."  Dkt. No. 85 at 35.  In

21  response, Kendall says "I'll se [sic] what I can do with White-Out on the map"; "the map on

22  sheet 1 of 3 looks more like an official survey map which may be most appropriate."  *Id.*

23  To show Audubon's intent, plaintiffs also point to the fact that Audubon wanted to build a

24  visitor center but could not build on their existing property, Dkt. No. 84 at 64, 65, as well as

25  the land swap deal proposed by Osborn, which would have swapped plaintiffs' buildable

26  land for non-buildable land, Dkt. No. 85 at 46-49.  Based on these facts, a reasonable jury

27  could conclude that Audubon intended for plaintiffs to rely on their representations.

28  *//*

### d.     Justifiable reliance

Audubon claims that because plaintiffs knew the maps were a preliminary survey, and had specifically asked to see the results before the surveys were finalized, any reliance alleged is unjustified.  Dkt. No. 88 at 11.  Audubon further argues that plaintiffs cannot demonstrate reliance because they did not ask any of the questions that a reasonable person in plaintiffs' position would have asked if they had in fact relied on Audubon's statements about the maps.  *Id.* at 14.

Plaintiffs respond that their reliance is demonstrated by their commissioning their own survey, hiring attorneys, and engaging in land swap negotiations with Audubon.  Dkt. No. 86 at 24.  Plaintiffs state that because Audubon represented that the maps were authentic, correct and could be recorded, they spent "countless hours of time and effort refuting Audubon's false claims," and spent money on surveys, attorneys, and preparing for negotiations. Dkt. No. 71 ¶ 7.  Both at the March 2007 meeting and in email correspondence, plaintiffs asked questions about when the maps would be recorded and what Audubon intended to do about the boundary dispute.  For example, in May 2007 in response to land swap proposal from Audubon, plaintiffs asked Osborn "Should we assume that the survey maps included with the proposal are the finished maps ready to be recorded?" Dkt. No. 85 at 38.

The facts in the record indicate that some of what Audubon said to plaintiffs was true and some of what it said was false.  The parties dispute when plaintiffs learned that some of Audubon's statements were false, however, plaintiffs have supported their opposition with facts that show a genuine dispute as to whether their reliance was justified.

### e.     Damages

Audubon asserts that as a matter of law, plaintiffs cannot prevail on their deceit claim because the damages they allegedly incurred—surveyors costs and attorneys costs— are not the type of damages recoverable under California tort law.  Dkt. No. 88 at 14. California allows successful plaintiffs to recover out-of-pocket losses and "[a]mounts actually and reasonably expended in reliance upon the fraud."  Cal. Civ. Code § 3343(a).

This additional amount is an expansion of damages recoverable for fraud claims and is taken "together with" any out-of-pocket losses incurred from reliance on fraud or deceit. *Cory v. Villa Properties*, 225 Cal. Rptr. 628, 633 (Cal. Ct. App. 1986). "If a plaintiff shows no traditional 'out-of-pocket' loss, that component of the award is zero. If, however, he goes on to show consequential or 'additional' damage of the type prescribed by the statute, the amount which he so demonstrates is recoverable." *Stout v. Turney*, 586 P.2d 1228, 1235 (Cal. 1978) (in bank). Thus, under § 3343, plaintiffs may recover consequential damages even if they cannot show, or did not incur, out-of-pocket losses.

Given the parties' conflicting arguments regarding the nature of the representations, Audubon's intent, and plaintiffs' reliance, and the factual documentation in support of each, a reasonable jury could find that Audubon intended to misrepresent the location of the section nine boundary and that plaintiffs' justifiably relied on Audubon's statements. Accordingly, summary judgment is inappropriate for plaintiffs' deceit claim.

**3.     The statute of limitations bars plaintiffs' slander of title claim.**

The elements of a slander of title claim are (1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss. *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 93 Cal. Rptr. 3d 457, 464 (Cal. Ct. App. 2009). The applicable statute of limitations is three years and the cause of action accrues when the aggrieved party discovers the facts constituting the slander. Cal. Civ. Proc. Code § 338.

Audubon argues that plaintiffs' slander of title claim is barred by the statute of limitations. Plaintiffs contend that the claim did not accrue until the boundary dispute was resolved and the easements were recorded, on March 4, 2010. Dkt. 48 ¶ 28. Presumably, plaintiffs' argument is that they could not know for sure whether Audubon's statements were false until the boundary dispute was settled in their favor. Alternatively, plaintiffs assert two equitable theories to extend the time in which they have to bring their slander of title claim: equitable tolling and equitable estoppel. They also seek to conduct additional discovery under Federal Rule of Civil Procedure 56(d), if the Court finds the claim barred.

In August 2007, plaintiffs' counsel sent Audubon a letter which stated that Audubon was falsely representing ownership of plaintiffs' land.  Dkt. No. 5, Ex. H.  This letter indicates that plaintiffs were aware of the slander as early as 2007.  Plaintiffs filed their original complaint in September 2011, after the three year statute of limitations had expired.  The Court is not persuaded by plaintiffs' equity theories.

Nor is the Court persuaded that additional discovery would reveal facts that would suggest that the three-year limitations period has not expired, such that a reasonable jury would find for plaintiffs on this issue.  Plaintiffs state in a footnote that they should be allowed additional discovery on this claim, if the Court finds it time-barred.  Dkt. No. 86 at 32 n.24.  They have not shown, however, what essential facts they cannot present, nor the specific reasons why they cannot present them, as required by Rule 56(d).  Plaintiffs have already amended their complaint, after being provided notice of Audubon's statute of limitations defense.  Therefore, the Court GRANTS Audubon's motion for summary judgment on plaintiffs' slander of title claim and DENIES plaintiffs' request for additional discovery.

### 4.     The statute of limitations bars plaintiffs' claim for intentional infliction of emotional distress.

In order to establish a claim for intentional infliction of emotional distress under California law, a plaintiff must show (1) that the defendant's conduct was outrageous, (2) that the defendant intended to cause or recklessly disregarded the probability of causing emotional distress, and (3) that the plaintiff's severe emotional suffering was (4) actually and proximately caused by defendant's conduct.  *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004).  To be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *KOVR-TV, Inc. v. Superior Court*, 37 Cal. Rptr. 2d 431 (Cal. Ct. App. 1995).  Whether conduct is outrageous is usually a question of fact.  *Ragland v. U.S. Bank N.A.*, 147 Cal. Rptr. 3d 41, 60 (Cal. Ct. App. 2012).  The applicable statute of limitations is one year.  *Maynard v. City of San Jose*, 37 F.3d 1396, 1406 (9th Cir. 1999); Cal. Civ. Proc. Code § 340.  The cause of action accrues, and the

1    statute begins to run, when the plaintiff suffers severe emotional distress caused by the

2    defendant's outrageous conduct.  *Cantu v. Resolution Trust Corp.*, 6 Cal. Rptr. 2d 151, 170

3    (Cal. Ct. App. 1992).

4         Plaintiffs allege that the same conduct that gives rise to their deceit claim, namely,

5    Audubon's misrepresentation of the boundary line, its presentation of the altered survey

6    maps as accurate and recordable, and its claimed ownership of their property, was also

7    extreme or outrageous and caused them severe emotional distress.  Dkt. No. 48 ¶ 44; Dkt.

8    No. 86 at 27-28.  The dates plaintiffs assign to this conduct spans from 1998 through 2010,

9    with most of the conduct occurring in March and April of 2007, when plaintiffs met with

10   Audubon to discuss the results of the Curtis surveys.  Dkt. No. 86 at 12-16, 17.  In October

11   2008, plaintiffs' surveyor received the field notes related to the Curtis survey, and sometime

12   shortly thereafter, plaintiffs discovered that Audubon had altered the Curtis survey maps

13   and misrepresented the conclusions of that survey.  Dkt. No. 86 at 30.  Nowhere in the

14   record do plaintiffs state they began to suffer emotion distress on a particular date.  Even

15   assuming that plaintiffs began to suffer their emotional distress only after they discovered

16   that Audubon had misrepresented the results of the Curtis survey to them, the statute of

17   limitations on their claim for emotional distress ran out in 2009.  Plaintiffs filed their

18   original complaint in September 2011.  Accordingly, the Court GRANTS Audubon's

19   motion for summary judgment on this claim.

20        **5.    As a matter of law, plaintiffs' negligent infliction of emotional distress
           claim fails.**

21

22        A cause of action for negligent infliction of emotional distress requires that a plaintiff

23   show "(1) serious emotional distress, (2) actually and proximately caused by (3) wrongful

24   conduct (4) by a defendant who should have foreseen that the conduct would cause such

25   distress."  *Austin*, 367 F.3d at 1172.  In California, the law imposes a duty to avoid causing

26   emotional distress in two instances: (1) in bystander situations in which a plaintiff seeks to

27   recover damages as a percipient witness to the injury of another; and (2) where emotional

28   distress results from a duty owed to the plaintiff that is assumed by the defendant, imposed

by law, or arises out of a special relationship between the two. *McMahon v. Craig*, 97 Cal.
Rptr. 3d 555, 560-61 (2009). The general negligence standard is inapplicable to emotional
distress claims. *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 807 (Cal. 1993). The
applicable statute of limitations is one year. *W. Shield Investigations & Sec. Consultants v.
Superior Court*, 98 Cal. Rptr. 2d 612, 622 (Cal. Ct. App. 2000); Cal. Civ. Proc. Code § 340.

The conduct that gives rise to this claim is the same conduct that gives rise to
plaintiffs' deceit and intentional infliction of emotional distress claims, namely, Audubon's
misrepresentation of the boundary line, its presentation of the altered survey maps as
accurate and recordable, and its claimed ownership of their property. Dkt. No. 48 ¶ 48; Dkt.
No. 86 at 29-30. At oral argument, plaintiffs cited to *Vega v. Jones, Day, Reavis & Pogue*,
17 Cal. Rptr. 3d 26 (Cal. Ct. App. 2004), which they allege imposes a duty on Audubon to
disclose fully the circumstances surrounding the survey maps. Audubon responded in a
letter brief. Dkt. No. 92. *Vega* held that a duty to disclose is not required to state a claim
for fraud because a claim for active concealment may be actionable where, in the absence of
a duty to speak, a party nevertheless does so and makes misleading statements or suppresses
material facts. *Id.* at 34. *Vega* does not, however, impose a duty to disclose in the first
place. Plaintiffs must show that Audubon owed them a duty beyond the reasonable person
standard in order to state a claim for negligent infliction of emotional distress, and they
have not. Accordingly, this claim fails as a matter of law. The Court therefore GRANTS
Audubon's motion for summary judgment on this claim.

*//*

**IV. CONCLUSION**

Audubon has not met its initial burden under California's Anti-SLAPP statute. Audubon has also not established that its statements to plaintiffs are privileged under § 47(c).  Accordingly, its motion to strike is DENIED.

Considering Audubon's motion for summary judgment, the Court finds that plaintiffs have demonstrated a genuine issue of material fact as to whether Audubon's statements constituted fraud.  The Court therefore DENIES the motion for summary judgment on plaintiffs' deceit claim.  Audubon's motion for summary judgment on plaintiffs' slander of title claim, claim for intentional infliction of emotional distress, and claim for negligent infliction of emotional distress is GRANTED.

IT IS SO ORDERED.

Date: November 21, 2012

Nathanael M. Cousins
United States Magistrate Judge

Case No. 11-cv-05599 NC
ORDER RE: MOTION FOR                    23
SUMMARY JUDGMENT